UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
GEORGE POTANOVIC, JR.,                              :
            Plaintiff,                              :
                                       :        **OPINION AND ORDER**
v.                                                 :
                                       :        22 CV 3293 (VB)
TOWN OF STONY POINT,                               :
             Defendant.                          :
--------------------------------------------------------------x

Briccetti, J.:

Plaintiff George Potanovic, Jr., brings this action pursuant 42 U.S.C. § 1983 alleging defendant the Town of Stony Point (the "Town") violated his First Amendment free speech rights and right to access public proceedings, and his Fourteenth Amendment right to equal protection, by omitting the public input portion of meetings of the Stony Point Town board (the "Town Board") from live broadcasts on Facebook Live and from video recordings archived on the Town's Facebook page.

Now pending are defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) (Doc. #10) and a motion to intervene filed by Serve Rockland Civic Association ("Serve Rockland") and Michael Diederich, Jr., a Town resident and founder of Serve Rockland (together, the "Proposed Intervenors") (Doc. # 17).

For the reasons set forth below, the motion to dismiss is GRANTED and the motion to intervene is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiff's favor, as summarized below.

Plaintiff alleges the Town invites public attendance at Town Board[1] meetings. According to plaintiff, each meeting features a "public input session" during which the public may ask questions of, or provide information to, the Town Board.  (Doc. #1 ("Compl.") ¶ 2).

Historically, Town Board meetings were held in person in the Town.  However, in March 2020, after public spaces were closed due to the onset of the COVID-19 pandemic, the Town Board began holding its meetings through the Zoom videoconferencing platform.  Members of the public could attend the meetings and speak during the public input session via Zoom.

Around May 11, 2021, the Town Board resumed in-person meetings, and began live-broadcasting these in-person meetings using the Facebook Live platform.  Video recordings of these meetings were also archived on the Town's Facebook page for later viewing.  Those viewing a meeting remotely via Facebook Live could not participate—they could only observe. In-person attendees, however, could speak during the public input session, and their remarks were observed by those who viewed the live broadcast or the archived video recordings.

However, this practice allegedly changed as of October 12, 2021.  At that time, plaintiff claims the Town ceased broadcasting the public input session on Facebook Live.  The Town also began omitting the public input session from the recording archive posted on the Town's Facebook page.  Instead, those viewing the live broadcast or archived video recordings allegedly

---

[1]     The Town Board is comprised of the Town's four councilmembers and the Town Supervisor, who serves as chairman.

can view the meeting up until the public input session, but see a blank screen and hear nothing during that session.  Video and audio resume after the public input session ends, enabling viewers of the Facebook Live and archived video to observe the remainder of the meeting. Plaintiff also contends that, sometimes, video and audio resume while members of the Town Board are responding to public comments, but viewers do not have the opportunity to hear the question or remark that prompted the Town Board's response.

Plaintiff alleges he has been a frequent speaker at Town Board meetings for over thirty years and, when he cannot attend in person, he watches the meetings from home.  He contends he participates in public input sessions both in his individual capacity and as a representative of a local advocacy group.  He claims he intends to address the Town Board during future public input sessions, and to view future meetings online when he cannot attend in person.

Plaintiff commenced this action on April 22, 2022, alleging the Town's new policy of omitting public input sessions from the Facebook Live broadcast and archived video recordings (the "Policy") violates his First Amendment free speech rights and right to access public meetings, and that the Policy also draws an impermissible classification between in-person and at-home viewers that violates the Equal Protection clause of the Fourteenth Amendment.

## DISCUSSION

I.   Motion to Dismiss

A.   Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the

---

[2]       Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

B.    First Amendment Claims

Plaintiff brings two First Amendment claims.  First, plaintiff claims the Policy violates his freedom of speech by preventing his remarks during public input sessions from being heard by at-home viewers.  Second, plaintiff claims the Policy violates his right to access public meetings by preventing him from remotely observing public input sessions.[3]

1.    Legal Standard

The First Amendment provides "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  The First Amendment also provides the public with a right of access to certain government proceedings.  See Whiteland Woods, L.P. v. Twp. of W.

---

[3]    Plaintiff does not allege the Policy violates his First Amendment rights by limiting his ability, as an at-home viewer, to speak during the public input session.

Whiteland, 193 F.3d 177, 181 (3d Cir. 1999).  These restrictions are applicable to the states and their political subdivisions through the due process clause of the Fourteenth Amendment.  U.S. Const. amend XIV; see also Douglas v. Jeannette, 319 U.S. 157, 162 (1943).  Thus, a plaintiff may bring a claim against the political subdivision of a state alleging a violation of his First Amendment rights pursuant to Section 1983.

"The first issue to be addressed in any challenge to the constitutional validity of a rule under the First Amendment is whether a First Amendment right exists, for if it does not, we need go no further."  Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1250–51 (3d Cir. 1992) (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 797 (1985)).  Thus, "[i]n evaluating § 1983 claims for First Amendment violations, courts first inquire whether the activity in question is protected . . . under the First Amendment."  Hershey v. Goldstein, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013).

Restrictions on "forms of speech protected under the First Amendment" are "subject to constitutional scrutiny," with the level of scrutiny depending on the nature of the forum in which the speech is restricted and the nature of the restrictions imposed.  Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Rec., 311 F.3d 534, 544 (2d Cir. 2002).  In a limited public forum,[4] the government may make reasonable, viewpoint-neutral rules restricting the content of speech allowed, but content-neutral rules restricting the time, place, and manner of expression must survive constitutional scrutiny.  Id. at 545–46.

The First Amendment right of access applies to local government meetings open to the public.  See, e.g., Malta v. Slagle, 2007 WL 952045, at *4 (W.D.N.Y. Mar. 29, 2007).  However,

---

[4]     The parties agree the public input sessions are a limited public forum for First Amendment purposes.

the First Amendment "does not guarantee unfettered access to government information," and the "critical question is whether the restriction meaningfully interferes with the public's ability to inform itself of the proceeding."  Id.

        2.      Freedom of Speech

Defendant argues plaintiff's freedom of speech claim must be dismissed because plaintiff has no First Amendment right to have his remarks during the public input session of Town Board meetings broadcasted and archived by the Town.

The Court agrees.

To be sure, the activity of speaking at Town Board meetings, within the purpose for which the limited public forum was opened, is protected speech.  See, e.g., Zapach v. Dismuke, 134 F. Supp. 2d 682, 688 (E.D. Pa. 2001) (speech on matters related to zoning ordinances during a zoning hearing board was protected speech).  However, plaintiff fails plausibly to allege the Policy restricted him from engaging in that activity.

According to the complaint, the purpose of the public input session is to "allow members of the public to address the Town Board on matters of public interest and concern in a public setting where all members of the public attending the meeting are able to hear such comments and the Town Board's responses/reactions."  (Compl. ¶ 49).

Plaintiff does not allege the Policy prevents him from addressing the Town Board in a public setting—indeed, he alleges he spoke during public input sessions after the Policy was adopted and intends to do so in the future—or limits the content of his remarks.  Nor does he allege the Policy precludes fellow in-person attendees from hearing his remarks.  Instead, the Policy, as alleged, only restricts the public's ability to observe the public input session through an online platform, "either live or afterward at their leisure."  (Doc. #15 ("Pl. Opp.") at 3).  Such

6

a restriction does not infringe plaintiff's First Amendment freedom of speech rights.  See, e.g.,

Anello v. Anderson, 191 F. Supp. 3d 262, 274 (W.D.N.Y. 2016) (turning off the microphone

recording remarks for later broadcast "did not infringe [the plaintiff's] First Amendment rights in

any way, since [the plaintiff] has no First Amendment right to have his remarks recorded for

later broadcast" and turning it off "did not prevent [the plaintiff] from speaking, did not restrict

[his] speech in any way, and did not otherwise impact [his] ability to relay his remarks during the

council meeting").

Accordingly, because plaintiff fails plausibly to allege the Policy infringes his First

Amendment right to free speech, this claim must be dismissed.

> 3.    Right of Access

Defendant next argues plaintiff's right of access claim must be dismissed because

plaintiff has no First Amendment right to observe public comment outside of the physical

location provided by the Town.

The Court agrees.

The factual allegations in the complaint do not suggest the Policy restricted plaintiff's

ability to access the public input session of Town Board meetings.  Plaintiff could—and did—

attend Town Board meetings in person after the Policy was adopted.

A state subdivision need not "accommodate every potential method of recording its

proceedings, particularly where the public is granted alternative means of compiling a

comprehensive record."  Whiteland Woods, L.P. v. Twp. of W. Whiteland, 193 F.3d 177, 183

(3d Cir. 1999) (upholding ban on videotaping planning commission meetings); Rice v. Kempker,

374 F.3d 675, 679 (8th Cir. 2004) ("[C]ourts have universally found that restrictions on

videotaping and cameras do not implicate the First Amendment guarantee of public access.")

(collecting cases).  Although plaintiff may have wanted to access certain public input sessions through the Town's Facebook Live broadcast or archived footage, the First Amendment does not require the Town to provide such access.  See Westmoreland v. Columbia Broad. Sys., 752 F.2d 16, 23 (2d Cir. 1984) ("There is a long leap . . . between a public right under the First Amendment to attend trials and a public right under the First Amendment to see a given trial televised.").

Accordingly, because plaintiff fails plausibly to allege the Policy restricts his First Amendment right to access public proceedings, this claim must be dismissed.

C.      Equal Protection Claim

Defendant argues plaintiff has failed to state an Equal Protection claim because plaintiff, when he views the Facebook Live broadcast or archived video recordings of a Town Board meeting, is not similarly situated to an in-person meeting participant.

The Court agrees.

1.      Legal Standard

The Fourteenth Amendment provides "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated be treated alike." Latrieste Rest. v. Vill. of Port Chester, 188 F.3d 65, 69 (2d Cir. 1999) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  However, a "classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

When a claim of differential treatment is "based on similar circumstances <u>alone</u>," a plaintiff must allege:  "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  <u>Hu v. City of New York</u>, 927 F.3d 81, 93–94 (2d Cir. 2019).  However, a plaintiff need not allege "subjective ill will towards the plaintiff."  <u>Id</u>. at 94.

2.   <u>Application</u>

Here, plaintiff claims the Town, through the Policy, has drawn a classification between in-person and at-home viewers that infringes upon an at-home viewer's First Amendment right to observe the public input session of Town Board meetings.  (Compl. ¶ 71).  However, as discussed above, plaintiff has no First Amendment right to remotely access the public input session.

Therefore, plaintiff's equal protection claim is based neither on membership in a protected class nor on an infringement of fundamental constitutional rights.  Accordingly, his claim of differential treatment relies "on similarity alone," and he must meet the "stringent similarity standard" required to plead an Equal Protection claim.  <u>Hu v. City of New York</u>, 927 F.3d at 91.  He fails to do so.

Plaintiff's allegations do not support a reasonable inference that individuals viewing a Town Board meeting via Facebook Live are similarly situated to those present at the meeting.  At-home Facebook Live viewers cannot—and even before the Policy was adopted, could not— speak during the public input session.  Remote viewers of archived meeting recordings also cannot participate, and necessarily are watching the meeting after it occurred.  Thus, in-person

attendees can participate and engage in Town Board meetings in a way remote viewers cannot. Because plaintiff fails plausibly to allege remote, non-participatory viewers of a Town Board meeting are similarly situated to in-person attendees, he cannot state an Equal Protection claim based on the Town's different treatment of these two groups.  See Panzella v. City of Newburgh, 231 F. Supp. 3d 1, 8 (S.D.N.Y.) (collecting cases dismissing Equal Protection claims under Rule 12(b)(6) when plaintiffs failed to allege "well-pled facts showing that the plaintiff has been treated differently from others similarly situated").

And even if plaintiff had plausibly alleged at-home viewers were sufficiently similar to in-person attendees, there are ample "reasonably conceivable state[s] of facts that could provide a rational basis" for treating remote viewers differently.  F.C.C. v. Beach Commc'ns, Inc., 508 U.S. at 313; Smith v. City of Middletown, 2011 WL 3859738, at *5 (D. Conn. Sept. 1, 2011) (resolution that "permitted the public to comment after Council meetings, without a television camera, on issues that were not listed on the meeting agenda" was reasonable), aff'd sub nom., Smith v. Santangelo, 518 F. App'x 16 (2d Cir. 2013) (summary order).  For example, the Town might believe citizens would be less likely to share sensitive concerns with the Board if they knew their comments would be posted on social media and could be easily disseminated beyond the community.  "When neither the complaint nor the non-moving party's opposition negate any reasonably conceivable state of facts that could provide a rational basis for the challenged classification, a defendant's motion to dismiss an equal protection claim will be granted." Immaculate Heart Cent. Sch. v. N.Y. State Pub. High Sch. Athletic Ass'n, 797 F. Supp. 2d 204, 211 (N.D.N.Y. 2011).

Accordingly, plaintiff's Equal Protection claim must be dismissed.

II.   <u>Motion to Intervene</u>

Because the Court grants the Town's motion to dismiss, there is no longer a case or controversy in which the Proposed Intervenors may intervene.  When "the action in which a litigant seeks to intervene has been discontinued, the motion to intervene is rendered moot." <u>Kunz v. N.Y. State Comm. on Jud. Misconduct</u>, 155 F. App'x 21, 22 (2d Cir. 2005) (summary order).

Accordingly, the Proposed Intervenors' motion to intervene must be denied.

**CONCLUSION**

The motion to dismiss is GRANTED.

The motion to intervene is DENIED

The Clerk is instructed to terminate the motions (Docs. ##10, 17) and close this case.

Dated: January 17, 2023
       White Plains, NY

                              SO ORDERED:

                              _____
                              Vincent L. Briccetti
                              United States District Judge

11